**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DR. DARREN PASCAVAGE, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case Number 1:23-cv-00336** |
| | ) | |
| **v.** | ) | **Removed from the Circuit Court of** |
| | ) | **Mobile County, Alabama** |
| **ST. LUKE'S EPISCOPAL SCHOOL,** | ) | **Case No. 02-CV-2023-901572** |
| et al. | ) | |
| **Defendants.** | ) | |

### MOTION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT ON BEHALF OF SUZY BANKS, MICHELLE BENTLEY, DUNCAN CASSIDEY, PHILIP CUMMINGS, CATHY HAYES, AND BRENDA LANGHAM

Because they played no role in Plaintiff's separation from employment with St. Luke's Episcopal School and were not board members during Plaintiff's tenure, Defendants Suzy Banks, Michelle Bentley, Duncan Cassidey, Philip Cummings, Cathy Hayes, and Brenda Langham named in their individual and official capacities (collectively, the "St. Luke's Six") move for summary judgment under Federal Rule of Civil Procedure 56 as to all of Plaintiff's claims asserted against them.[1]  In support of this motion, the St. Luke's Six state as follows:

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Each of the St. Luke's Six are employed by the St. Luke's Episcopal School ("the School").  See Declarations of Banks, Bentley, Cassidey, Cummings, Hayes, and Langham (collectively referred to as "St. Luke's Six Decls.") at ¶¶ 2 (Exhibit 1 to Evidentiary Submission).[2]

---

[1] The St. Luke's Six reserve the right to assert additional or supplemental defenses as may be appropriate.

[2] Referenced exhibits are included in the Evidentiary Submission submitted in support of this Motion.

2.     Plaintiff is the former Headmaster for St. Luke's Episcopal School. Plaintiff worked under an employment contract (the "Employment Agreement") with the School.   (See Employment Agreement at Exhibit 2).

3.     None of the St. Luke's Six were voting members on St. Luke's School Board of Trustees (the "Board") while Plaintiff was employed by the School, nor were they involved in his termination.  Id. at ¶¶ 5, 6.[3]

4.     During Plaintiff's tenure as Headmaster, each of the St. Luke's Six reported to Plaintiff and had no authority to take any adverse employment actions against Plaintiff.  Id. at ¶¶ 3.

5.     None of the St. Luke's Six made false public statements about Plaintiff.  Id. at ¶¶ 7.

## STANDARD OF REVIEW

A defendant is entitled to summary judgment where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant adequately supports his or her motion, the opposing party must establish "by producing affidavits or other relevant and admissible evidence beyond the pleadings" specific facts raising a genuine issue for trial.  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011); Fed. R. Civ. P. 56(c)(1)(A).

## ARGUMENT

Plaintiff's Complaint, which interweaves claims of breach of contract and every tort he could conceive, presents a confusing and often incoherent mosaic of claims, but centers around

---

[3] Suzy Banks became Interim Head of School after the Board voted to terminate Plaintiff on December 8, 2022.  Due to her role as Interim Head of School, Banks became a non-voting member of the Board after the termination of Plaintiff's contract.  Banks Decl. at ¶ 6.

2

the termination of the Employment Agreement and, none of the St. Luke's Six were involved in the termination of the Employment Agreement or are alleged to have committed any torts.  For the reasons set forth below, this Court should dismiss the claims against the St. Luke's Six with prejudice pursuant to Rule 56.[4]

I.   **All of Plaintiff's Claims Against the St. Luke's Six Are Barred by the Ministerial Exception Because They Arise from His Employment and the Termination Thereof.**

All of Plaintiff's claims against the St. Luke's Six (and all of the other Defendants) are barred by the ministerial exception.  This exception applies to employment disputes between "a minister and his church employer."  McCants v. Alabama-West Florida Conference of United Methodist Church, Inc., 372 F. App'x 39, 41-42 (11th Cir. 2010).  A minister under the exception includes principals, teachers, and other individuals entrusted "with the responsibility of educating and forming students in the faith[.]"  Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S.Ct. 2049 (2020) (remanding case to appellate court and holding that ministerial exception applies to two teachers' employment disputes against Catholic school); Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171 (2012) (reversing lower court's judgment and holding plaintiff who was a "called teacher" was a minister for purposes of the ministerial exception); Nolen v. Diocese of Birmingham in Alabama, No. 5:16-cv-00238-AKK, 2017 WL 3840267 (N.D. Ala. Sept. 1, 2017) (granting summary judgment in favor of Catholic School as to principal's 42 USC § 1981 and breach of employment contract claims due to ministerial exception).

_____

[4] Plaintiff's Complaint is the posterchild for shotgun pleading, including lumping defendants together in multiple allegations.  Setting that aside and reading the Complaint in a light most favorable to Plaintiff, however, the St. Luke's Six are nonetheless entitled to summary judgment on each of his claims.

3

Dr. Pascavage plainly qualifies as a minister under the exception because, by his own allegations, as Headmaster of the School, he was tasked with leading the School in its mission to educate students not only academically, but spiritually.  Dr. Pascavage alleges he "was hired to serve as Head of School (Head Master) under the supervision of" the Church and the Board (Doc. 1-2, ¶ 20 at p. 58) and there was an "employment relationship between the School, Board, Vestry, and Church."  (Id., ¶ 244 at p. 105).  Dr. Pascavage claims "[t]he Defendants serving on the Board and a party to the contract, were tasked with "[his] annual evaluation . . . ensuring compliance with the teachings of the Episcopal Church . . . ."  (Id., ¶ 20 at p. 58).  He states that certain of the Church Defendants, are "well versed in the beliefs, and policies of the Episcopal Church" and that Defendant Rev. McElroy "regularly met and counseled with the Board [] Members and the Plaintiff . . . ."  (Doc. 1-2, ¶¶ 7 at p. 52).  Dr. Pascavage contends he "officially stated" to certain Defendants "that many of the financial, ethical, and establishment rules and/or policies of the [S]chool, were not consistent with the teachings of the Episcopal Church . . . ."  (Id., ¶ 27 at pp. 59-60).  He further claims that the defendants "had adverse reactions to [Dr. Pascavage] implementing and encouraging the teachings and general inclusion of any/all groups consistent with the teachings of the Episcopal Church."  (Id., ¶ 31 at p. 61).

The recent Hosanna-Tabor decision from the Supreme Court of the United States solidifies that Dr. Pascavage is covered by the ministerial exception as someone whose "job duties reflected a role in conveying the Church's message and carrying out its mission" and whose employment was tasked with performing a job "according to the Word of God and the confessional standards of the [] Church as drawn from the Sacred Scriptures."  (Id. at 191).  Dr. Pascavage notes that the School "is an institution sponsored by [SLE Church] and is an integral part of [SLE] Church."  (Doc. 1-2, ¶ 78 at p. 70).  He served as Headmaster at the School whose stated purpose "is to provide a sound

preparation for higher education and the rest of life by providing quality mental and spiritual training." (Id.).  His annual evaluation included "ensuring compliance with the teachings of the Episcopal Church . . . ." (Id., ¶ 149 at p. 84).  Indeed, Dr. Pascavage claims he "and his methods of administration were consistent with the teachings of the Episcopal Church . . . ." (Id., ¶ 149 at p. 84).

It is clear from Dr. Pascavage's own words that he views himself to have had, in the words of the Hosanna-Tabor Court, "an important role in transmitting the []faith to the next generation" (565 U.S. at 192) and that he has based the claims in his Complaint against the St. Luke's Six on disputes arising from his employment, and the termination thereof.  Because Dr. Pascavage's own allegations about himself, the School, his employment as Headmaster, and the termination of that employment make clear Dr. Pascavage is a minister within the meaning of the ministerial exception, "the First Amendment requires dismissal of [his] employment discrimination suit against [his] religious employer." Hosanna Tabor, 565 U.S. at 194.

Additionally, the Northern District of Alabama recently considered the applicability of the ministerial exception to breach of contract claims made by a principal against her former employer, a Catholic grammar school.  Nolen, 2017 WL 3840267, at *4. In granting summary judgment in favor of the defendant Diocese on the plaintiff principal's breach of contract claim, the Nolen Court cited Hosanna Tabor in concluding that the ministerial exception applied, "as resolution of that claim would require significant intrusion into internal church policy, an area not subject to interference by the state." Id. at n.7.  This Court should follow the Nolen Court in applying the ministerial exception to Dr. Pascavage's breach of contract-related claims as well as the federal employment claims.

In short, all of the allegations in Dr. Pascavage's Complaint are based on his employment and the termination thereof.  Allowing any of Dr. Pascavage's claims to proceed will inevitably

muddle the Court in the religious questions that the ministerial exception dictates must be avoided. As the Hosanna-Tabor Court recognized, the purpose of the ministerial exception is to "ensure[] that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,' is the church's alone." (Id. at 195, internal citation omitted). Applying the ministerial exception to the entirety of the claims in Dr. Pascavage's Complaint furthers that purpose.

The Hosanna-Tabor Court's reasoning compels the dismissal of Dr. Pascavage's Complaint in full at this threshold stage. See Our Lady of Guadalupe Sch., 140 S.Ct. at 2064 ("What matters, at bottom, [for the ministerial exception] is what an employee does. And implicit in our decision in Hosanna-Tabor was a recognition that educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school.")

## II.    St. Luke's Six's Summary Judgment is Due to be Granted on Plaintiff's Breach of Contract Claim (Count VI) Because None of the St. Luke's Six Was A Party to the Employment Agreement.

Although buried at the back of his Complaint, Plaintiff's allegations center around his claim of breach of contract in Count VI. None of the St. Luke's Six was a party to the Employment Agreement and so they cannot be liable for its breach. The only parties to the Employment Agreement were the School and Plaintiff. (See Ex. 2). As none of the St. Luke's Six was a party to the Employment Agreement, none can be liable for breach of that contract. See e.g., Lessley, No. 1:20-000220KD-B, 2020 WL 8459160, *2 (S.D. Ala. Oct. 5, 2020) (citing Roland v. Cooper, 768 So. 2d 400, 4040 (Ala. Civ. App. 2000)); Ligon Furniture Co., Inc., 551 So. 2d 283, 285 (Ala. 1989) (affirming summary judgment on breach of contract claim where individual was not a party to the contract). Additionally, none of the St. Luke's Six were voting members on the Board when

the contract was terminated and had no involvement in the termination.  Ex. 1, St. Luke's Six

Decls. at ¶¶ 6.

### III.    <u>Plaintiff's Claims Suffer from Multiple Facial and Insurmountable Legal Defects</u>.

The ministerial exception and the fact that none of the St. Luke's Six played any role in

voting for or against Plaintiff's employment are the shortest routes to judgment in their favor, but

they are hardly the only routes.  Plaintiff's claims are replete with legal problems that entitle the

St. Luke's Six to summary judgment.  For example, and without limitation:

**A.  St. Luke's Six Cannot be Individually Liable Under Title VII**.

It is well established that Title VII claims are not viable against individuals in their

individual capacity.  <u>Dearth v. Collins</u>, 441 F.3d 931, 933 (11th Cir. 2006).

**B.  Wrongful Termination is not Recognized Under Alabama Law**.

Wrongful termination is not a viable independent claim under Alabama law:  "A tort claim

for the wrongful termination of an employment contract has not been recognized in Alabama."

<u>Morrow v. Town of Littleville</u>, 576 So. 2d 210, n.2 (Ala. 1991) (citation omitted)).  Moreover,

none of the St. Luke's Six were voting members on the Board when the Employment Agreement

was terminated, and they had no involvement in the termination.  Ex. 1, St. Luke's Six Decls. at

¶¶ 6.

**C.  Plaintiff Does Not Allege Defamation By Any of the St. Luke's Six, Nor Could He Truthfully Do So.**

Plaintiff's shotgun assertions fall far short of the specificity required for a defamation claim

against any of the St. Luke's Six.  To establish a <u>prima facie</u> case of defamation, Plaintiff must

show "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged

communication of that statement to a third party; 3) fault amounting at least to negligence on the

part of the defendant; and 4) either actionability of the statement irrespective of special harm or

the existence of special harm caused by the publication of the statement." McCaig v. Talladega Publ'g Co., 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (Second) of Torts § 558 (1977)). "Publication of a libel is the communication of the defamatory matter to some third person or persons." Brackin v. Trimmier Law Firm, 897 So. 2d 207, 220 (Ala. 2004) (citation omitted). "If there is no publication, there is no defamation." Tucker v. Salazar, 163 So. 3d 375, 381 (Ala. Civ. App. 2014) (quoting Willis v. Demopolis Nursing Home, Inc., 336 So. 2d 1117, 1120 (Ala. 1976)).

Despite spanning hundreds of paragraphs, Plaintiff's Complaint makes no specific reference to any of the St. Luke's Six publishing any statements about Plaintiff, much less false and defamatory statements. Indeed, any such allegations would be untrue. See St. Luke's Six Decls. at ¶¶ 7. The only alleged false and defamatory statements that could be construed to have been published by any of the St. Luke's Six (who were not serving as board members) occurred during board meetings. See (Doc. 1-2, ¶ 162 at p. 46) ("All Defendants had knowledge of the false and defamatory statement made in numerous Board of Trustees meetings") cf. (Doc. 1-2 ¶¶ 126, 217, 192 at pp. 38, 58, 53-54) (alleging that "other Defendants, while serving as members of the Board" and "other Defendants, Board of Trustees members" made defamatory statements).

Even if any of the St. Luke's Six made statements during board meetings about their supervisor, such statements were not published *to a third party* and were protected by a qualified privilege. Hayes v. Wal-Mart Stores, Inc., 953 F. Supp. 1334, 1341 (M.D. Ala. 1996) (citing Mead Corp. v. Hicks, 448 So. 2d 308 (Ala. 1983) ("accusations of theft made by one employee about another employee in the presence of other interested employees . . . are unquestionably subject to a qualified privilege."); Watters v. La. Pac. Corp., 156 F. App'x 177, 179 (11th Cir. 2005) (holding that, under Alabama law, "communications made to employees in the course of investigating the plaintiff's employment behavior do not constitute third-party publication for defamation

purposes") (internal citations omitted)).  Given that such alleged statements are protected by a qualified privilege, plaintiff's claims are "not actionable unless the plaintiff can prove that the defendant[s] acted with malice."  Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197, 200 (Ala. 1990) (citing Mead Corp. v. Hicks, 448 So. 2d 308, 313 (Ala. 1983)).  And, as previously noted, out of the 240 paragraphs, none of them specifically reference any of the St. Luke's Six publishing or speaking any statements about Plaintiff, much less identify any malicious actions by the St. Luke's Six.  Thus, Plaintiff's defamation claims against the St. Luke's Six fail as a matter of law.

**D.  Plaintiff Fails to Allege Wrongful Use of Process in the Abuse of Process Claim**.

Next, summary judgment is due on the abuse of process claim.  Abuse of process requires Plaintiff to show that the St. Luke's Six initiated a judicial proceeding against Plaintiff; the proceedings were executed maliciously; that they were terminated in favor of Plaintiff; and that Plaintiff suffered damages as a result.  Edison v. Olin Corp., 527 So. 2d 1283, 1284 (Ala. 1998).  Plaintiff alleges no such facts, nor could he truthfully.

In fact, Plaintiff cites to C.C. &J., Inc., v. Hagood, 711 So. 2d 947, 950 (Ala. 1998) and Dempsey v. Denman (Doc. 1-2, ¶¶ 255-56 at p. 108) for the elements of an abuse of process [and allegedly power].  Plaintiff expressly states that the elements include "a wrongful use of process", but cites to no use of judicial process, much less a wrongful use, by any of the St. Luke's Six.  In other words, Plaintiff sets out the required elements of the tort, but then alleges nothing to suggest he could possibly meet the elements in this case.  This claim therefore fails as a matter of law.

**E.  The St. Luke's Six are Due Summary Judgment as to Count II, Part Reiteration of Breach of Contract and Part Tort for Which Plaintiff Lacks Standing.**

Plaintiff cannot prove wanton conduct by any of the St. Luke's Six to render Count II potentially viable.  Plaintiff claims that defendants either presented or relied upon false information

to induce the Board to terminate his Employment Agreement.[5]  He also claims that because the Board did not take actions he claims to have requested and did not agree with his alleged course of action, they "plac[ed] the health and safety of the children enrolled in the lower campus in jeopardy."[6]

As an initial matter, Plaintiff's wantonness claim fails because it is based on an alleged breach of the Employment Agreement.  Plaintiff begins this count by "realleg[ing] that the Defendants owed a duty to the Plaintiff to honor the contractual Employment Agreement" (Doc. 1-2, ¶ 156 at pp. 44-45).  Alabama does not recognize a tort-like cause of action, however, for the breach of a duty created by contract.  See Barber v. Bus. Prods. Ctr., 677 So. 2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"), overruled on other grounds by White Sands Grp., LLC v. PRS II, LLC, 32 So.3d 5 (Ala. 2009); Am. Dist. Tel. Co. of Ala. v. Roberts & Son, 122 So. 837, 840 (Ala. 1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation).  Here, Plaintiff asserts that "Defendants owed a duty… to honor the contractual Employment Agreement…", (Doc. 1-2, ¶ 156 in Count II at pp. 44-45).  "[T]hat is to say, the duties and breaches alleged [by the plaintiff] clearly would not exist but for the contractual relationship between the parties." Shedd v. Wells Fargo Bank, No. 14-0275-WS-M, 2016 WL 3264127, *4 (S.D. Ala. June 13, 2016) (citing to Alabama Supreme Court precedent that "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim[.]").  Plaintiff's claim of wanton conduct in Count II premised on the termination of his Employment

---

[5] See paragraphs 156, 160, 162-164, 166 (Doc. 1-2 at pp. 87-89).
[6] See paragraphs 157-159, 161, 165, 167-168.  (Doc. 1-2 at pp. 87-89).

Agreement fails as a matter of law. Moreover, none of the St. Luke's Six were on the Board during his employment or involved in the termination of his Employment Agreement.

Plaintiff's assertion of wanton conduct in Count II, alleging that defendants placed the students in jeopardy,[7] also fails as a matter of law because Plaintiff presents no allegation or evidence in this regard as to the St. Luke's Six.  They were not on the Board, did not have a vote, and each of them reported to Plaintiff.  If they had placed students in jeopardy, Plaintiff's role as their boss would have been to take action against them.  (See Ex. 2, ¶2(b)).  This fact alone renders Plaintiff's claim untenable.  If this is not enough, Plaintiff has presented no allegation or evidence of actual harm to anyone (he merely surmises, without support, that the alleged conditions could have created issues), but also because Plaintiff lacks standing to assert such a claim.  Malowney v. Fed. Collection Deposit Gp., 193 F.3d 1342, 1346–47 (11th Cir. 1999) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983), and Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1205 (11th Cir. 1991)).  Aside from the termination of his Employment Agreement, Plaintiff makes no allegation that he was injured.  Plaintiff's wantonness claim in Count II therefore fails as a matter of law.

### F.  Plaintiff Alleges No Wanton Conduct to Support Count III.

Next, Plaintiff cannot prove wanton conduct by the St. Luke's Six relating to any of Plaintiff's requests to repair facilities, move students, or regarding minority students. In Count III, Plaintiff again states that "Defendants owed a duty to Plaintiff to honor the contractual

---

[7] Plaintiff alleges that "[a]ll Defendants had knowledge of the safety and health hazards on the lower (Japonica) School Campus and … declined to allocate funds from the budget or move the children. . . . " (Id.,¶ 157 at p. 87) and that "[a]ll Defendants had a duty to protect the health and safety of the children/students . . . but "consciously and intentionally failed that duty." (Id., ¶ 158 at p. 87). "Defendant's (sic) reckless conduct toward the Plaintiff and his children as well as the other children enrolled at the lower (Japonica) campus showed conscious disregard of Plaintiff's protected rights and the Plaintiff is entitled to an award of punitive damages."  (Id., ¶ 168 at p. 89).

Employment Agreement between the Plaintiff and Defendants" (Doc. 1-2, ¶ 171 at p. 90) and he again alleges hazardous conditions at the School.  This count fails, as with the others, because the St. Luke's Six did not vote to terminate Plaintiff – they reported to him.  They had no contract with Plaintiff that they could have breached.  The only difference between Count II and Count III is that, in Count III, Plaintiff also claims a violation of the "Defense of Minorities Act Treatment of Minority Students." The basis for this claim is unclear. Plaintiff provides no citation to the "Defense of Minorities Act" and no description of what the Act requires or prohibits.  Faced with addressing a claimed violation of this uncited Act, counsel for the St. Luke's Six have searched multiple legal resources, including Westlaw, Google, and Bloomberg law, and cannot locate any reference to the "Defense of Minorities Act" in any jurisdiction.  The St. Luke' Six believe that this is not actually a cause of action available under either state or federal law and request that it be dismissed pursuant to Rule 56.  The St. Luke's Six request that if this claim is not dismissed with prejudice that the Court require Plaintiff to provide a citation to this Act so they can address the claims brought under it.

### G.  Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff, whose Employment Agreement has already been terminated, alleges no facts suggesting that he is likely to suffer future injury.  "To demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  Malowney, 193 F.3d at 1346–47 (citations omitted).  Moreover, despite incorrect statements about the St. Luke's Six in the Complaint and Plaintiff's attorney's public comments about the defendants in the press, Plaintiff seeks to infringe upon the St. Luke's Six First Amendment rights by demanding an injunction prohibiting them from making

any public statements whatsoever about Plaintiff or his wife. Plaintiff's injunctive and declaratory relief claim also seeks wide-ranging damages, but declaratory and injunctive relief is equitable and "[i]t is well-settled that 'equitable relief is available only in the absence of an adequate remedy at law.'" SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A., 243 Fed. Appx. 502, 503–04 (11th Cir. 2007) (citing Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994); Deckert v. Indep. Shares Corp., 311 U.S. 282, 289, 61 S.Ct. 229, 233 (1940)). Each of the St. Luke's Six is entitled to summary judgment on Plaintiff's injunctive relief claim.

**H.  None of the St. Luke's Six May be Found Liable for the Tort of Negligent Training.**

Plaintiff provides no evidence that his subordinates, the St. Luke's Six, had a duty to train anyone, much less that they improperly trained or failed to train anyone. As such, Plaintiff's claim fails. Additionally, only an employer is potentially subject to such a claim, and none of the St. Luke's Six employed Plaintiff. See e.g., Hill v. Madison Cnty. Sch. Bd., 957 F. Supp. 2d 1320 (N.D. Ala. 2013), aff'd in part, rev'd in part on other grounds, Hill v. Cundiff, 797 F.3d 948 (11th Cir. 2015). The tort theory of negligent training lies only against the employer of an "incompetent" employee, not the co-employees or even supervisors of the "incompetent" employee. See Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2021). Here, there is no assertion that any of the St. Luke's Six employed Plaintiff, nor could there be. Likewise, each of the St. Luke's Six reported to Plaintiff and, therefore, if anyone had a duty to train in that relationship, it was Plaintiff. Finally, a negligent training claim requires commission of a common-law tort, which Plaintiff has not established as to the St. Luke's Six. Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). See also Shuler v. Ingram & Assocs., 441 F. App'x 712, 720-21 (11th Cir. 2011) (citing Thrasher in support of this rule). As shown herein, Plaintiff has no viable tort claim against any employee of the School (or any other Defendant for that matter).

### I. Plaintiff Cannot Prove his Conspiracy Claim Against the St. Luke's Six.

Plaintiff cannot prove any alleged conspiracy claim against the St. Luke's Six, whether under Alabama state law, Section 1985, or in violation of his alleged free speech rights.  Under Alabama law, "[l]iability for civil conspiracy rests upon the existence of an underlying wrong, and if the action alleged to constitute the underlying wrong provides no cause of action, then neither does the conspiracy itself."  Barber, 677 So. 2d at 228.  As shown above, Plaintiff cannot establish that any of the St. Luke's Six committed any underlying tort to support a viable conspiracy claim.  Further, a conspiracy claim cannot proceed on an underlying breach of contract (which fails anyways in this case for all of the reasons set forth above).  See Ponder v. Lake Forest Prop. Owners Ass'n., 214 So.3d 339 (Ala. Civ. App. 2015) citing Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So. 2d 1135, 1142 (Ala. 2006).  As to Plaintiff's claim of a violation of the right to free speech, none of the St. Luke's Six could have violated Plaintiff's right to free speech because none of them are state actors (or are even alleged to be).  As to Plaintiff's claims under Section 1985, there is no allegation or evidence that any of the St. Luke's Six conspired or went in disguise on the highway or the premises of another.  Count Eight therefore fails, and the St. Luke's Six are entitled to summary judgment.

### CONCLUSION

Plaintiff's claims against the St. Luke's Six lack any factual or legal merit.  None of the St. Luke's Six served as voting members on the Board during the events underlying this lawsuit.  The Court should enter summary judgment in favor of the St. Luke's Six and also hold that there is no just reason to delay entry of a final judgment in favor of the St. Luke's Six under Rule 54(b).  See

Fed. R. Civ. P. 54(b).  Lastly, the St. Luke's Six request costs against Plaintiff and such further relief as may be warranted under the circumstances.

Respectfully submitted,

*/s/ T. Matthew Miller*
T. Matthew Miller (ASB-2129-I66T)
Anne Knox Averitt (ASB-2668-N76M)
Cortlin Bond (ASB-6096-X12M)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Email: mmiller@bradley.com
Email: aaveritt@bradley.com
Email: cbond@bradley.com
*Attorneys for SLE St. Luke's Six*

15

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Christine C. Hernandez
James Adam Muns
The Hernandez Firm, LLC
P.O. Box 66174
Mobile, AL 36606
Email: Christine@equalizingjustice.com
Email: James@equalizingjustice.com
*Attorneys for Plaintiff*

Augusta S. Dowd
Katherine Rogers Brown
White Dowd & Arnold
2001 Park Place North, Ste 1400
Birmingham, AL 35203
Email: adowd@whitearnolddowd.com
Email: kbrown@whitearnolddowd.com
*Attorneys for St. Luke's Episcopal Church,*
*St. Luke's Episcopal Church*
*Vestry and its Members,*
*Rt. Rev. Russell Kendrick,*
*and Reve. Jamie McElroy*

/s/ T. Matthew Miller
OF COUNSEL

16